UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL GARVEY,

                              Plaintiff,

            -against-

PETER NOONAN, individually, MICHAEL
SULLIVAN, individually, and the TOWN OF
CLARKSTOWN, NEW YORK,

                            Defendants.

-------------------------------------------------------------X

10-CIV-_____ (    )

**JURY TRIAL DEMANDED**

**10 CIV 04309**

**JUDGE KARAS**

     Plaintiff, MICHAEL GARVEY, by and through his attorneys, FEERICK LYNCH MacCARTNEY PLLC, for his Complaint, respectfully alleges as follows:

## NATURE OF THE ACTION

    1.     This is an action for compensatory and punitive damages, proximately resulting from conduct jointly engaged in by Defendant under cover of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983.

## JURISDICTION

    2.     This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

## THE PARTIES

    3.     Plaintiff, MICHAEL GARVEY (hereinafter "Garvey"), is a citizen of the United States, a domiciliary of the State of New York, and a resident of the counties located in the Southern District of New York.  At all times relevant to this Complaint, he was employed as a

permanent, tenured, sworn member of the Police Department of the Defendant, TOWN OF CLARKSTOWN, New York, holding the rank of Sargeant.

4.      Defendant PETER NOONAN (hereinafter "Noonan"), who is sued herein in his personal and individual capacities, at all times relevant to this Complaint is the duly appointed Chief of Police of the Defendant TOWN OF CLARKSTOWN (hereinafter the "Town" or "Clarkstown").  As such, he, along with his co-Defendant MICHAEL SULLIVAN (hereinafter "Sullivan"), shared final, discretionary authority to act on behalf of the Defendant Town with respect to granting and/or denying statutory benefits as provided for Town Police Officers by § 207-c of the New York State General Municipal Law (hereinafter "§ 207-c).

5.      Defendant Sullivan, who is sued in his personal and individual capacities, at all times relevant to this Complaint is the duly appointed Captain of Police of Defendant Town; as such, he, along with co-Defendant Noonan, shared final, discretionary authority to act on behalf of the Defendant Town with respect to the granting and/or denying of statutory benefits as provided for Town Police Officers by § 207-c. And, to the extent Sullivan only followed orders, no claim is being raised against him.

6.      Defendant Town is a municipal corporate subdivision of the State of New York, duly existing by reason and pursuant to the laws of said State.

**THE FACTS**

7.      On January 9, 2008, in the course of assisting in an arrest, Plaintiff suffered an on-the-job, disabling injury as a result of which he was accorded, by way of a property right, the statutory, financial entitlements provided for by reason of § 207-c.  Plaintiff thereafter received those entitlements continuously except as indicated *infra*.

8.      By correspondence dated April 19, 2010, Noonan advised Plaintiff as follows:

2

John S. Mazella, M.D., has reported to the Town of Clarkstown that you can return to full duty.

You are hereby directed to report to Captain Sullivan at C.P.D. headquarters on Thursday, April 22, 2010 at 6:30 a.m.

9.      By correspondence dated April 26, 2010, Noonan advised Plaintiff as follows:

. . . the Town's medical expert found that the knee sprain you may have suffered while on duty on January 9, 2008, has completely resolved and that you are able to perform your full police duties.

While the Department is in full agreement with the medical opinion of the examining orthopedic surgeon, I have elected to start your return on transitional, restricted-duty status to allow you time to reacquaint yourself with the relevant procedures and routines of your position.

Please be further advised that you will not be accorded GML section 207-c benefits for future absences or illness due to any gout-related maladies, e.g., the calcific formations in your knee.

10.      By correspondence dated May 12, 2010, Plaintiff's treating physician provided medical evidence which in words or substance made it clear to Defendants that due to Plaintiff's on-the-job injuries, Plaintiff was not

. . . ready to return to full duty as a police officer.  Light duty would be an option, if available, as long as he is insulated from emergency situations where he would be required to suddenly accelerate or exert himself physically.  In any event, whole duty [was] not feasible at this time.

11.      Plaintiff's treating physician "respectfully but firmly disagree[d] with Dr. Mazella who indicates that Sgt. Garvey's current limitations arise from a pre-existing gout condition and concludes that Sgt. Garvey is fit to return to full duty [and recognized] that Sgt. Garvey has limitations in lifting, carrying, bending, squatting, crawling and climbing."

12.      By correspondence dated May 14, 2010, Sullivan acknowledged receipt of Plaintiff's treating physician/s May 12th and reiterated that Plaintiff was to report for work in a transitional, restricted-duty capacity later that day at 14:30 hours.

13.    By correspondence dated May 17, 2010 (but not delivered until May 26, 2010), Noonan further advised that Noonan had reviewed Sgt. Garvey's Doctor's written opinion dated May 12, 2010 and determined that:

> Dr. Simon's letter does not serve to contradict the opinion of the Town's examining orthopedic surgeon. . . . As previously indicated, although I have full confidence in Dr. Mazella's IME and expert medical opinion, to facilitate a smooth transition in our return to duty, you have been ordered to return to work on a transitional, restricted duty status pending further administrative evaluation.

14.    By letter dated May 26, 2010, Plaintiff requested a hearing challenging the Town's decision to discontinue the benefits he had received pursuant to § 207-c and proposed the following questions for resolution at such a hearing:

1)    Is Sgt. Garvey fit for full duty as the Department maintains?

2)    What criteria should the Department follow for taking Sgt. Garvey off transitional, restricted duty?

3)    What notice should the Department be required to give Sgt. Garvey before ordering him off transitional, restricted duty so as to allow Sgt. Garvey's challenge of such order without risking either his safety or a charge of insubordination?

4)    Is the transitional, restricted-duty status proposed by the Department consistent with Sgt. Garvey's "status as a police officer" as required by 207-c(3), taking into consideration the chance that he would, on pain of insubordination, be required to remain passive while fellow officers or the public were in harm's way?

15.    Article XXII, Sec. 2, of the collective bargaining agreement, to which all parties are bound, burdens only the Town with production of a "medical determination or opinion." The only reference to police officers and such medical determinations or opinions has to do with the police officer's right to receive them from the Town. Furthermore, the Town, when armed only with an oral medical determination, is allowed to reduce to writing the "sum and substance" of that oral determination.  By contrast, when the police officer requests a hearing, the process is

started by the police officer's submitting only such a request (presumably in writing) and his or her proposed questions.

16.    By correspondence dated May 27, 2010, Defendant Sullivan:

advised that the Chief's original order to return to work in a transitional duty capacity remains unchanged and . . . [there is] a direct order for you to return to work in a transitional, restricted duty capacity at 14:30 hours on Saturday, May 29, 2010.

17.    As a proximate result, commencing on or about April 22, 2010, Defendants unilaterally discontinued and/or substantially reduced the monetary benefits to which Plaintiff was statutorily entitled under § 207-c, refusing to pay him for time when he was either physically unable to complete a shift due to his on-the-job injuries, and/or to work a particular shift for the same reason under full-duty constraints.

18.    Prior to Defendants' taking the unilateral action referenced herein, they did not accord Plaintiff a due process hearing and/or any opportunity to be heard before an independent, impartial tribunal.

19.    By reason of the Defendants' conduct, Plaintiff has been caused to suffer pecuniary losses, lapses in continuing service for purposes of retirement benefits, lost personal time, anxiety, emotional upset, public embarrassment, public humiliation, and shame; and Defendants are responsible therefor.

## COUNT I AGAINST ALL DEFENDANTS
## 42 U.S.C. SECTION 1983

20.    Plaintiff repeats and realleges herein each of the foregoing allegations as though set forth at length.

21.    The right of a disabled police officer to receive § 207-c disability payments and benefits constitutes a property interest giving rise to procedural and substantive due process

protection under the 14th Amendment to the United States Constitution. Such protections must be satisfied before those payments and benefits may be terminated or reduced.

24.     Further, a due process hearing regarding an attempt to revoke payments and benefits is triggered when an officer on § 207-c status requests a hearing and submits questions, regardless of whether he submits medical evidence from his treating physician supporting the officer's claim of continued disability.

25.     Defendants acted intentionally, knowingly, and/or maliciously to terminate Plaintiff's payment and benefits to which Plaintiff was statutorily entitled to under § 207-c.

26.     The aforesaid actions, customs and/or policies of Defendants were performed by Defendants, individually and in concert, while acting under color of state law in their official capacities to deprive Plaintiff of his federal rights under the 14th Amendment to the United States Constitution.

27.     Defendants acted without legal authority to do so and in contravention of existing laws that were clearly defined.

28.     As a result of the aforesaid wrongful actions, policies and/or customs, the Defendants deprived Plaintiff of his constitutional rights granted under the 14th Amendment to the United States Constitution and injured him. They are responsible for the damages caused thereby.

WHEREFORE, a judgment is respectfully demanded:

(a)     Awarding as against all Defendants such compensatory damages as a jury may determine;

(b)     Restoring ··· § 207-c benefits and any lost time or benefits;

(c)     Awarding as against the individually named Defendants, such punitive damages as a jury shall impose;

(d)     Awarding reasonable costs and attorneys' fees; and

(e)     Granting other and further relief as the Court may deem just and proper.

Dated: South Nyack, New York
       May 28, 2010

FEERICK LYNCH MacCARTNEY PLLC
Attorneys for Plaintiff
96 South Broadway
P.O. Box 612
South Nyack, New York 10960
(845) 353-2000
djfeerickjr@aol.com

By:_____
       Donald J. Feerick, Jr. (DF 3299)